## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

T-JAT SYSTEMS 2006 LTD.,

           Plaintiff,

   v.

EXPEDIA, INC. (DE), EXPEDIA, INC. (WA),
and ORBITZ WORLDWIDE, INC.,

           Defendants.

Case No. 16-cv-00581-RGA

---

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR
## FAILURE TO STATE A CLAIM AND FOR IMPROPER VENUE

**K&L GATES LLP**
Steven L. Caponi, Esq. (#3484)
600 N. King Street
Suite 901
Wilmington, DE 19801
Phone: (302) 416-7080
Email: steven.caponi@klgates.com

Of counsel:

Theodore J. Angelis
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Phone: (206) 623-7580
Email: theo.angelis@klgates.com

*Attorneys for Defendants Expedia, Inc. (DE),*
*Expedia, Inc. (WA) and Orbitz Worldwide, Inc.*

Eric A. Prager
K&L Gates LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 536-3900
Email: eric.prager@klgates.com

Dated: July 21, 2017

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................................2

    A.    T-Jat's Asserted Claims ...................................................................................2

    B.    T-Jat's New Venue Allegations ........................................................................3

    C.    Prior Litigation Related to the Asserted Patents ...........................................4

III.  ARGUMENT ..............................................................................................................4

    A.    T-Jat's Asserted Claims Are Not Eligible for Patent Protection. ...........................4

        1.    The Claims of the Patents-in-Suit are Drawn to an Unpatentable, Abstract Idea. ........................................................................... 6

        2.    The Claims of the Patents-in-Suit Fail to Include an Inventive Concept. ...................................................................................... 9

    B.    The Court Should Dismiss Claims Against Expedia-WA for Improper Venue. ................................................................................................12

IV.   CONCLUSION ..........................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ..................................................................................5, 6, 9

*Apple, Inc. v. Ameranth, Inc.*
   842 F.3d 1229 (Fed. Cir. 2016) ...........................................................................7

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
   788 F.3d 1371 (Fed. Cir. 2015) ...........................................................................5

*Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*,
   406 U.S. 706 (1972) ...........................................................................................14

*Callwave Commc'ns, LLC v. AT&T Mobility*,
   207 F. Supp. 3d 405, 413 (D. Del. 2016) ...................................................8, 10, 12

*Concaten, Inc. v. Ameritrak Fleet Sols., LLC*,
   131 F. Supp. 3d 1166, 1174 (D. Colo. 2015), *aff'd*, Case No. 2016-1112, 2016
   WL 5899749 (Fed. Cir. Oct. 11, 2016) ..................................................................8

*CyberFone Sys., LLC v. Cellco P'ship*,
   885 F. Supp. 2d 710 (D. Del. 2012), *aff'd sub nom. Cyberfone Sys., LLC v.
   CNN Interactive Grp., Inc.,* 558 F. App'x 988 (Fed. Cir. 2014) .........................9, 12

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016) ...........................................................................8

*In re Cordis Corp.*,
   769 F.2d 733 (Fed. Cir. 1985) ...........................................................................13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ......................................................................................5, 9

*Messaging Gateway Sols., LLC v. Amdocs, Inc.*,
   Case No. CV 14-732-RGA, 2015 WL 1744343 (D. Del. Apr. 15, 2015) ...............10

*Pragmatus Telecom, LLC v. Genesys Telecommunications Labs., Inc.*,
   114 F. Supp. 3d 192, 201 (D. Del. 2015) ..............................................................12

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   137 S. Ct. 1514 (2017) ......................................................................................13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   2016 WL 4373698 (D. Del. Aug. 15, 2016) ...........................................................11

*Yodlee, Inc. v. Plaid Techs. Inc.*,
    No. CV 14-1445-LPS, 2016 WL 2982503 (D. Del. May 23, 2016)), *report
    and recommendation adopted*, Case No. CV 14-1445-LPS-CJB, 2017 WL
    385039, at *4 (D. Del. Jan. 27, 2017) ............................................................................. *passim*

**Statutes**

28 U.S.C. § 1391(c) ...............................................................................................................14

28 U.S.C. § 1400(b) ..........................................................................................................13, 14

35 U.S.C. § 101....................................................................................................1, 4, 5, 12

**Other Authorities**

Fed. R. Civ. Proc. 11 ..........................................................................................................1, 13

Fed. R. Civ. Proc. 12(b) ...............................................................................................1, 4, 12, 14

I.       **INTRODUCTION**

The Court should dismiss all claims in the Second Amended Complaint for Patent Infringement (D.I. 24), submitted by Plaintiff T-Jat Systems 2006 Ltd. ("T-Jat"), because the allegedly infringed patent claims are not eligible for patent protection under 35 U.S.C. § 101. The patents at issue address a problem from the pre-smartphone era.  In particular, certain telephone devices could not access then-popular Internet applications, such as AOL Instant Messenger and MSN Messenger.  To overcome this problem, the patents teach the use of an intermediate server with a "virtual client entity" that translates communications between the telephone device and the server that hosts the Internet application.  U.S. Patent No. 8,064,434 ("the '434 patent") at Abstract.  This Court has repeatedly held that such data transformations and translations—designed to overcome hardware limitations—are not patent eligible.  It should do so again here and dismiss T-Jat's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

Alternatively, the Court should dismiss all claims against Expedia, Inc. (WA) ("Expedia-WA") for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3).  In the Second Amended Complaint, T-Jat (for the first time) alleged that venue for its claims against Expedia-WA is proper in Delaware because Expedia-WA has a "regular and established" place of business in this District.  *Compare* D.I. 24 at 6-7 ¶ 16, *with* D.I. 10 at 6 ¶ 16.  However, T-Jat does not (and could not consistent with Rule 11), allege that Expedia-WA or its corporate parent Expedia, Inc. (DE) ("Expedia-DE") have any employees, operations, facilities, or computer equipment in Delaware.  Instead, T-Jat relies on the fact that Expedia-WA's mobile websites and mobile applications are available to individuals in Delaware.  That is not sufficient to support an allegation that Expedia-WA has a "regular and established" place of business.  Nor is the corporate relationship between and Expedia-WA and Expedia-DE sufficient to establish venue,

not least because *neither* entity has any presence in Delaware.  The Court should dismiss T-Jat's

claims against Expedia-WA.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   T-Jat's Asserted Claims

Claim 1 of the '434 patent is at issue in this case.[1]  It provides:

A method for providing a user of a telephone device with a capability to use Internet-based applications, which method comprises the steps of:

> transmitting from said telephone device an indication towards a first server, denoting a request to be connected to an Internet-based application residing at a second server;

> providing said user with a menu from which the user selects a requested Internet-based application;

> after selecting an application, establishing a communication path that extends between said telephone device and said second server via said first server;

> at said first server, creating a virtual client entity specific to said telephone device and said Internet-based application to be used, created specifically to allow communication between said telephone device and said Internet-based application residing at said second server, and maintained only for the duration of a communication session that is about to take place between said user and said Internet-based application, thereby providing the user of said telephone device with the capability to use said Internet-based application; and

> exchanging communications between said second server and said telephone device.

'434 patent at 8:11-34.

The Specification—in the "Background of the Invention" section—explains that "current

cellular telephones" cannot use "services such as ICQ, MSN and other real time applications."

---

[1] T-Jat has also alleged infringement of claims 1, 9, and 12 of U.S. Patent No. 9,210,142 ("the '142 patent").  Claim 1 of the '142 patent is essentially identical to claim 1 of the '434 patent, but it omits the following element in claim 1 of the '434 patent:  "providing said user with a menu from which the user selects a requested Internet-based application."  Claims 9 and 12 of the '142 patent respectively are a system claim and a *Beauregard* claim with essentially the same elements as claim 1 of the '434 patent or claim 1 of the '142 patent.  In the interest of brevity, Defendants do not reproduce all four claims here.

'434 patent at 2:5-10.[2]  The "major reason" for that inability is "that the provider's server(s) that support such an application [are] adapted to communicate with a computer terminal [rather than a mobile phone]."  *Id.* at 2:11-14.  Thus, in the Detailed Description of the Invention, the specification describes a translation process through which a virtual client "recoginze[s] the resources available for the telephone device making the request on the one hand, and the requirement set for communicating with the requested application's server, [on the other hand,] so that the virtual client . . . is constructed in a way that takes into account these various constraints."  *Id.* at 5:43-49; *see also id.* at 6:51-52 (describing one way in which the purported invention might "translate[] the information" between the telephone device and the servers); *id.* at 7:63-65 (describing that the intended scope of the invention is "establishing a communication tunnel between the telephone user and the application server, via an intermediate server and a virtual client application operative at that server").

### B.      T-Jat's New Venue Allegations

In its Second Amended Complaint, T-Jat included new venue allegations.  Regarding Expedia-WA, T-Jat alleges for the first time as follows:

> On information and belief, Defendant Expedia-WA has committed acts of infringement in this judicial district, has purposefully engaged in persistent courses of conduct in this district including transacting substantial business in this district and deriving substantial revenue from services provided to individuals in this district, and Expedia-DE controls or otherwise directs and authorizes the activities and operations of Expedia-WA including the infringing acts alleged herein and is the primary beneficiary of Expedia-WA's expected profits and, therefore, Expedia-WA has a regular and established place of business in this district.

D.I. 24 at 6-7 ¶ 16.

---

[2] The '142 patent is a continuation of the '434 patent and therefore shares the same written description.

3

### C.      Prior Litigation Related to the Asserted Patents

The '434 patent, which is the parent of the '142 patent, has been the subject of prior litigation.  T-Jat authorized an exclusive licensee to attempt to enforce the '434 patent in 2012 and 2013.  The licensee filed actions in the Eastern District of Texas against Pizza Hut, Domino's, Papa John's, Hungry Howie's, Papa Murphy's, Little Caesar, and CiciEnterprises.  All of these cases were dismissed with prejudice within three to seven months, often before opposing counsel appeared, and before there were any substantive filings.  The licensee also filed suit in Texas against the German airline Lufthansa during this period.  There likewise were no substantive filings in that case.

T-Jat's licensee also sued two banks in the Northern District of Illinois.  A case against J.P. Morgan Chase was dismissed with prejudice within seven months, again with no substantive filings.  And a case against Bank of America ended after counsel for T-Jat's licensee withdrew, leaving T-Jat's licensee without counsel.  A stipulation of dismissal with prejudice was later signed by Mary Colton, an individual in Marshall, TX identified as the manager of T-Jat's licensee.  There likewise were no substantive filings in that case.  The present case is the first filed since the 2012-13 cases and the first filed by T-Jat itself.

## III.     ARGUMENT

### A.      T-Jat's Asserted Claims Are Not Eligible for Patent Protection.

T-Jat's claims are directed to an abstract idea that is not eligible for patent protection under the requirements of 35 U.S.C. § 101.  T-Jat therefore fails to state a claim upon which relief may be granted, and the Court should dismiss its infringement claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

Section 101 of the Patent Act defines patent-eligible subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any

new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Laws of nature, natural phenomena, and abstract ideas are not patentable. *Alice Corp. v. CLS Bank Int'l,* 134 S. Ct. 2347, 2354 (2014). "The 'abstract ideas' category embodies the longstanding rule that [a]n idea of itself is not patentable." *Id*. at 2355.

The Supreme Court has set forth a two-step test for determining whether a patent claims only an ineligible, abstract idea. *See Alice,* 134 S. Ct. at 2355. *First*, the Court determines "whether the [patent] claims at issue are directed to" a patent-ineligible abstract idea. *Id.* Even if narrowly defined, abstract ideas are patent ineligible. *See Ariosa Diagnostics, Inc. v. Sequenom, Inc.,* 788 F.3d 1371, 1379 (Fed. Cir. 2015). *Second*, if the claims are directed to an abstract idea, the Court must then consider the elements of a patent claim "both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S. Ct. 1289, 1297, 1298 (2012)). As part of this second step, the Court "search[es] for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 134 S. Ct. at 2355 (internal quotations omitted). Neither the mere recitation that an abstract idea be performed on a "generic computer" nor "limiting the use of an abstract idea to a particular technological environment" is sufficient to confer patent eligibility. *Id*. at 2358 (internal quotation marks omitted). Thus, "[w]holly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the [patent claims are] more than a drafting effort designed to monopolize the

[abstract idea] itself.'" *Id*.  Likewise, "[s]imply appending conventional steps, specified at a high level of generality" is not enough to supply an inventive concept.  *Id*. at 2357.

> 1.      **The Claims of the Patents-in-Suit are Drawn to an Unpatentable, Abstract Idea.**

Claim 1 of the '434 patent, and claims 1, 9, and 12 of the '142 patent, disclose methods and systems for allowing users of older telephone devices to access and use Internet-based applications even though their devices are otherwise incapable of running such applications. Specifically, each asserted claim describes facilitating communication between a telephone device and a remote server via an intermediary server, such that the intermediate server contains a short-lived "virtual client" entity that is specific to a particular device and Internet-based application and thereby provides the "capability to use Internet-based applications."  '434 patent at 8:11-34; '142 patent at 8:18-39, 9:43-10:13, 10:22-44.   This type of intermediated communication, in which data are translated from one format to another to overcome hardware limitations, is precisely the type of claim this Court has found to be abstract and patent ineligible under *Alice*.

For example, in *Yodlee, Inc. v. Plaid Techs. Inc.,* some of the asserted claims were directed to a method for solving the problem that "certain forms of content were unsuitable" for transmission to mobile devices.  Case No. CV 14-1445-LPS, 2016 WL 2982503, at *22 (D. Del. May 23, 2016) (addressing claims from the '548 and '520 patents), *report and recommendation adopted*, Case No. CV 14-1445-LPS-CJB, 2017 WL 385039, at *4 (D. Del. Jan. 27, 2017).  The relevant *Yodlee* patents explained that "a growing number of portable devices with Internet-access capabilities were unable to receive or send certain types of data under normal circumstances."  *Id.* at *22.  And "[t]hese conditions necessitated a method and apparatus for

6

intelligent restructuring of personalized data and, in some cases, generalized data from the Internet into model/device-specific data formats . . . ." *Id.* (internal quotation marks omitted).

In *Yodlee*, the defendant argued—and this Court agreed—that the claims in these asserted patents were directed to the abstract idea of transforming data from one form to another. *Id.* at *23. The asserted claims here are directed to the same abstract idea. Here, as in *Yodlee*, the challenged claims take applications from an Internet-based application and transform them in a way that is specific to that application and to a particular client so that a user can run Internet-based applications on a mobile device that otherwise could not run them. *Compare id.* at *22 (claim language teaching transformation of communications for a "specific client" and communications "specific to an application"), *with* '434 patent at 8:23-25 (claim language requiring a virtual client entity "specific to [a particular] telephone device and [a particular] Internet-based application" to allow a telephone device to use Internet-based applications), *and* '142 patent at 8:23-30, 10:2-4; 10:33-34 (same for the asserted claims of '142 patent).[3] Thus, the claims at issue here are likewise directed to the abstract idea of translating communications into another format to allow a mobile device to access and use them, which is an abstract idea under *Alice* step one.

None of the remaining limitations go beyond the abstract idea at the core of the asserted claims. For example, generating menus[4] on a computer is a patent ineligible, abstract idea. *Apple, Inc. v. Ameranth, Inc.* 842 F.3d 1229, 1240-41 (Fed. Cir. 2016) (affirming finding of

---

[3] The specification at issue in *Yodlee* taught that transforming these communications specific to a particular device and application was useful because it allowed communications to proceed "without requiring hardware or software modifications." *Yodlee*, 2016 WL 2982503, at *22. Likewise, the specification for the patents at issue in this case explain that the transformation is designed to eliminate the "need for the telephone device to be configured in any way . . . ." '434 patent at 5:41-42.

[4] *See* '434 patent at 8:18-19 (menu limitation in claim 1 of the '434 patent); '142 patent at 9:51-52 (same for claim 9 of the '142 patent).

unpatentable abstract idea where the asserted patents "claim systems including menus with particular features.  They do not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems.").

Likewise, communications between a mobile device remote servers[5] is routine and conventional electronic transmission of information, which is not eligible for patent protection. *Concaten, Inc. v. Ameritrak Fleet Sols., LLC,* 131 F. Supp. 3d 1166, 1174 (D. Colo. 2015) (claims "drawn to the concept of receiving, processing, and transmitting data" found to be abstract ideas), *aff'd*, Case No. 2016-1112, 2016 WL 5899749 (Fed. Cir. Oct. 11, 2016).  That there is an intermediary first server included in the claims does not alter this conclusion. *Callwave Commc'ns, LLC v. AT&T Mobility*, 207 F. Supp. 3d 405, 413 (D. Del. 2016) (nothing that many courts have found intermediated communications to be an abstract concept and reasoning that "[r]equesting and receiving location information is an abstract idea, and adding a vaguely defined intermediary that selectively forwards requests and returns responses does not make the underlying abstract idea any more concrete.").  *See generally FairWarning IP, LLC v. Iatric Sys., Inc.,* 839 F.3d 1089, 1093 (Fed. Cir. 2016) ("We have explained that the realm of abstract ideas includes collecting information, including when limited to particular content…. And we have found that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis.").

---

[5] *See* '434 patent at 8:14-17, 8:20-22; 8:33-34 (server and device communication limitations in claim 1 of the '434 patent); '142 patent at 8:21-27, 8:38-39; 9:46-56; 10:27-32; 10:43-44 (same for claims 1, 9, and 12 of the '142 patent).

Nor does the inclusion of "a telephone device" as a component[6] make the underlying abstract idea any more concrete. *CyberFone Sys., LLC v. Cellco P'ship,* 885 F. Supp. 2d 710, 718 (D. Del. 2012), *aff'd sub nom. Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,* 558 F. App'x 988 (Fed. Cir. 2014) ("[T]he telephone is not an integral part of the claim; it simply functions as a means for [requesting] data whereas the real focus of the claim is the sorting and storing…the use of a telephone to [request] data does not make the abstract concepts of sorting and storing data somehow patent-eligible."); *see also Yodlee,* 2016 WL 2982503, at *22-*23 (finding claims that included a "client device" abstract).

In sum, the asserted claims fail *Alice* step one, as they are simply directed to an abstract idea.

### 2.    The Claims of the Patents-in-Suit Fail to Include an Inventive Concept.

Under *Alice* step two, the asserted claims lack any inventive concept, *i.e.* an element or combination of elements, that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice,* 134 S. Ct. at 2355 (quoting *Prometheus,* 132 S. Ct. at 1294-98). This is true for at least three reasons.

*First,* while the asserted claims arguably describe a particular technological environment, *i.e.* the "virtual client entity," the claims do not purport to explain **how** the virtual client entity transforms the Internet-based application into a form that can be displayed and accessed by the user's device. Rather, the physical components simply provide a generic environment (composed of a "telephone device," "first server," "second server," and "virtual client entity") by which translation somehow occurs so that a telephone device is able to use an Internet-based

---

[6] *See* '434 patent at 8:11, 14, 21, 24-25, 31, 34 (references to the telephone device in claim 1 of the '434 patent); '142 patent at 8:18, 22, 26, 29, 31, 36, 39 (same for claim 1 of the '142 patent); *id.* at 9:43, 47, 55, 10:3, 5-6, 10, 11 (same for claim 9 of the '142 patent); *id.* at 10:25, 27-28, 31, 33-34, 36, 40-41, 44 (same for claim 12 of the '142 patent).

application.  This fails to meet the "inventive concept" requirement.  *See, e.g., Nice Sys. Ltd. v. Clickfox, Inc.,* 207 F. Supp. 3d 393, 398 (D. Del. 2016) ("While claim 1 requires concrete, tangible components—such as 'Internet-based programs or documents,' 'a web analyzer using a processor,' and 'modeled sessions,' . . . the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea.")

In this regard, *Yodlee* is again instructive.  In *Yodlee,* the plaintiff argued that "the patent refers to software using certain 'input and output templates' when restructuring data." *Yodlee*, 2016 WL 2982503, at \*24.  The court was not persuaded that this added an inventive concept, because the claim language did not recite the utilization of these templates, and the claims were "focused on the idea of translating data into a new form, but they say almost nothing about *how* that translation must occur." *Id.* at \*25 (emphasis added).

*Yodlee* stands in contrasts to cases such as *Messaging Gateway Solutions*, which describe a particular technological solution.   Indeed, in *Yodlee* this Court distinguished *Messaging Gateway Solutions* because "the claim in *Messaging Gateway Solutions* described not only the type of message that was to be converted (an SMS text message), but also described how it was that the invention was to go about doing the converting (by inserting the body of that SMS message into an Internet Protocol message)," and there was nothing "approaching that level of detail" in the claims at issue in *Yodlee*. *Id.* at \*25 (discussing *Messaging Gateway Sols., LLC v. Amdocs, Inc.,* Case No. CV 14-732-RGA, 2015 WL 1744343, at \*1 (D. Del. Apr. 15, 2015)). The Court went on to find:

> Admittedly, the claims do require that the ultimate format of the translated information be "compatible with" "an application, other than an Internet browser application," but they say nothing about *how* that translation is to be accomplished. Nor, for example, does claim 20 contain any restriction on what *type* of application the new format need be compatible with, other than that it be a "'format compatible with at least one application that is not an Internet browser application."

*Yodlee*, 2016 WL 2982503, at *25 (emphases in original) (internal quotation marks and citations omitted).

The same analysis applies here. The asserted claims simply describes that a "virtual client entity" is created "specific to said telephone device and said Internet-based application to be used," "to allow communication between said telephone device and said Internet-based application residing at said second server," and "maintained only for the duration of a communication session that is about to take place between said user and said Internet-based application." *See supra* pp. 7-8. The claims do not recite ***how*** the "virtual client entity" interfaces between the Internet-based application and the telephone device or ***how*** the "virtual client entity" enables the telephone device to gain the capability to access and use the Internet-based application. Thus, the asserted claims do not contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention.

*Second*, although the ***specification*** provides some guidance on how the translation between the telephone device and Internet-application server might occur, those limitations are entirely absent from the claims. Courts in this District have emphasized that limitations in the specifications are insufficient to satisfy *Alice*'s second step. The language of the claims must disclose the limitations that supply an inventive concept in order to support a finding of patent eligibility. *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 2016 WL 4373698, at *5 (D. Del. Aug. 15, 2016) ("[T]he patent specifications do, in fact, point to the architecture of the system as a technological innovation…none of the claims, however, recite or refer to anything that could be described as an architecture…. [T]he ***claims*** must recite the mechanism by which those problems are solved.") (emphasis added).

11

*Third,* as discussed in the context of *Alice*'s first step, the claims do not recite any specific, non-conventional steps that go beyond the abstract idea of transforming data from one form to another to allow otherwise incompatible hardware to communicate. Intermediated communications between a device and a remote server are routine, and do not confer patent eligibility. *See, e.g.*, *Pragmatus Telecom, LLC v. Genesys Telecommunications Labs., Inc.,* 114 F. Supp. 3d 192, 201 (D. Del. 2015) ("Claim 1 merely recites a system for connecting a customer to a call center, using two servers to pass along certain information related to the call or process. The generic technological elements of the claim such as 'automated call distribution system,' 'network service,' 'terminal,' 'data,' 'remote,' 'one or more pages downloadable,' 'Internet Protocol (IP) address,' individually, or collectively do not transform the abstract idea into something more."); *Callwave*, 207 F. Supp. at 405 ("[A]dding a vaguely defined intermediary that selectively forwards requests and returns responses does not make the underlying abstract idea any more concrete."). Similarly, as shown above, the use of a telephone device at one end of this communication channel does not add an inventive concept to the claims. *See Cyberfone*, 885 F. Supp. 2d at 718.

Accordingly, there is no inventive concept that ensures that the claims are significantly more than a patent upon the abstract concept itself. T-Jat's claims are therefore invalid under 35 U.S.C. § 101. The Court should dismiss T-Jat's infringement claims pursuant to Fed. R. Civ. P. 12(b)(6).

### B.   The Court Should Dismiss Claims Against Expedia-WA for Improper Venue.

Venue in Delaware is improper for claims against Expedia-WA because it does not reside in Delaware and does not have a regular and established place of business in Delaware. The patent venue statute provides that "[a]ny civil action for patent infringement may be brought in

the judicial district [1] where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). T-Jat does not allege that venue is proper under the first prong of § 1400(b) because Expedia-WA is a Washington corporation and therefore resides in Washington rather than Delaware. D.I. 24 at 3 ¶ 4; *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017). Instead, T-Jat alleges that venue is proper under the second prong of § 1400(b) because Expedia-WA has committed acts of infringement in Delaware and has a regular and established place of business in Delaware.

T-Jat's allegations do not support the conclusion that Expedia-WA has a regular and established place of business in Delaware. The Federal Circuit has explained that "in determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous *presence* there." *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) (emphasis added). T-Jat, however, has not alleged (and could not allege consistent with Rule 11) that Expedia-WA has any employees, operations, facilities, or computer equipment in Delaware. Thus, Expedia-WA has no presence in Delaware and certainly no permanent and continuous presence here.

T-Jat does allege that Expedia-DE "controls or otherwise directs and authorizes the activities and operations of Expedia-WA," and Expedia-DE "is the primary beneficiary of Expedia-WA's expected profits." D.I. 24 at 7 ¶ 16. T-Jat, however, has not alleged (and could not allege consistent with Rule 11) that Expedia-DE has any operations, facilities, or computer

equipment in Delaware. Thus, T-Jat's attempts to tie Expedia-WA to Expedia-DE are irrelevant for venue purposes.[7]

T-Jat also wrongly claims that venue is proper because Expedia-WA derives revenue from Delaware customers. Doing business in a jurisdiction and receiving revenue from that business is not sufficient to establish a regular and established place of business there. *See Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 713 n.13 (1972) (distinguishing between the rigorous test for maintaining a "regular and established place of business" in a district set forth in 28 U.S.C. § 1400(b) and the less stringent "doing business" test contained in the former version of § 1391(c)). Accordingly, Delaware is an improper venue for patent infringement claims against Expedia-WA.

## IV.    CONCLUSION

For the reasons stated above, Defendants respectfully ask the Court to dismiss all of T-Jat's claims on the grounds that the asserted patents are not eligible for patent protection. Alternatively, Defendant Expedia-WA asks the Court to dismiss all claims against it, pursuant to Federal Rule of Civil Procedure 12(b)(3), on the grounds that Delaware is not a proper venue.

Dated:  July 21, 2017

**K&L GATES LLP**

/s/ Steven L. Caponi
Steven L. Caponi, Esq. (#3484)
600 N. King Street
Suite 901
Wilmington, DE 19801
Phone: 302.416.7080
steven.caponi@klgates.com

-and-

---

[7] Defendants do not agree that these agency allegations are sufficient to impose Expedia-DE's venue-related contacts on Expedia-WA. But even if they were, there are no allegations sufficient to support the conclusion that Expedia-DE has a regular and established place of business in Delaware.

Theodore J. Angelis
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
Telephone: (206) 623-7580
Email: theo.angelis@klgates.com


Eric A. Prager
K&L Gates LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 536-3900
Email: eric.prager@klgates.com


*Counsel for Defendants Expedia, Inc. (DE), Expedia Inc. (WA) and Orbitz Worldwide, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

/s/ *Steven L. Caponi*
Steven L. Caponi (#3484)