IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

T-JAT SYSTEMS 2006, LTD.,

    Plaintiff,

v.

EXPEDIA, INC. (DE), EXPEDIA, INC. (WA),
and ORBITZ WORLDWIDE, INC.,

    Defendants.

Civil Action No. 16-581-RGA

MEMORANDUM OPINION

John G. Day, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; Guy Yonay (argued), Daniel Melman, PEARL COHEN ZEDEK LATZER BARATZ LLP, New York, NY.

    Attorneys for Plaintiff.

Steven L. Caponi, K&L GATES LLP, Wilmington, DE; Theodore Angelis (argued), K&L GATES LLP, Seattle, WA; Eric A. Prager, K&L GATES LLP, New York, NY.

    Attorneys for Defendants.

March 26, 2018

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendants' Motion to Dismiss for Failure to State a Claim and for Improper Venue (D.I. 25) and related briefing (D.I. 26, 28, 30). The Court held oral argument on November 16, 2017. (D.I. 43 ("Tr.")). On December 22, 2017, Plaintiff filed a Motion for Leave to File a Supplemental Brief in Opposition to Defendants' Motion to Dismiss. (D.I. 36). The parties submitted additional briefing. (D.I. 36-2, 37, 40).

For the reasons that follow, the Court will deny without prejudice Defendants' Motion to Dismiss for Failure to State a Claim and for Improper Venue, as to failure to state a claim, and will grant that motion as to improper venue over Expedia, Inc. (WA). (D.I. 25). The remaining Defendants may re-raise the § 101 issue at summary judgment. The Court will dismiss as moot Plaintiff's Motion for Leave to File a Supplemental Brief in Opposition to Defendants' Motion to Dismiss. (D.I. 36).

## I. BACKGROUND

Plaintiff filed a patent infringement action on July 7, 2016 against Defendant, alleging infringement of U.S. Patent No. 8,064,434 ("the '434 patent") and U.S Patent No. 9,210,142 ("the '142 patent"). (D.I. 1). Plaintiff filed an amended complaint on July 7, 2017. (D.I. 24).

Plaintiff alleges infringement of claim 1 of the '434 patent and claims 1, 9, and 12 of the '142 patent. (*Id.*). Claim 1 of the '434 patent provides:

> 1. A method for providing a user of a telephone device with a capability to use Internet-based applications, which method comprises the steps of:
>
> transmitting from said telephone device an indication towards a first server, denoting a request to be connected to an Internet-based application residing at a second server;

1

providing said user with a menu from which the user selects a requested Internet-based application;

after selecting an application, establishing a communication path that extends between said telephone device and said second server via said first server;

at said first server, creating a virtual client entity specific to said telephone device and said Internet-based application to be used, created specifically to allow communication between said telephone device and said Internet-based application residing at said second server, and maintained only for the duration of a communication session that is about to take place between said user and said Internet-based application, thereby providing the user of said telephone device with the capability to use said Internet-based application; and

exchanging communications between said second server and said telephone device.

('434 patent, claim 1). On July 21, 2017, Defendants filed a Motion to Dismiss for Failure to State a Claim and for Improper Venue. (D.I. 25).

## II. LEGAL STANDARD

### A. Motion to Dismiss

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*,

2

550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## B. Patent-Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.*

3

(emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and 'as an ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* at 2357 (alterations in original) (quoting *Mayo*, 566 U.S. at 77). "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 566 U.S. at 82. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015).

4

Patent eligibility under § 101 is a question of law suitable for resolution on a motion to dismiss. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119 (2015). The Federal Circuit follows regional circuit law for motions to dismiss. *Content Extraction*, 776 F.3d at 1346.

The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348.

## III. DISCUSSION

### A. Patentable Subject Matter

Defendants assert that claims 1, 9, and 12 of the '134 patent are equivalent to of claim 1 of the '434 patent for purposes of this motion. (D.I. 26 at 2, n.1; Tr. 4:22-24). Plaintiff does not dispute this assertion. (D.I. 28 at 1, n.1; Tr. 17:14-19). Consequently, the parties limit their arguments to claim 1 of the '434 patent.

#### 1. Abstract Idea

"First, we determine whether the claims at issue are directed to [an abstract idea]." *Alice*, 134 S. Ct. at 2355. "The 'abstract ideas' category embodies 'the longstanding rule that [a]n idea of itself is not patentable.'" *Id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Supreme Court has recognized, however, that "fundamental economic practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human

5

activity," *Alice*, 134 S. Ct. at 2356, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract ideas. In navigating the parameters of such categories, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. "But in determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (alterations in original) (quoting *Alice*, 134 S. Ct. at 2354).

Plaintiff argues that "the problem addressed and the claimed solution are technical in nature." (D.I. 28 at 8). Plaintiff argues that the claimed invention solves a known, technical problem by allowing telephone users to access a variety of applications on remote servers "without requiring specialized software or hardware on the telephone device." (*Id.* at 2).

Plaintiff asserts that the claims "do not merely recite the abstract idea of retro-compatibility." (*Id.* at 8). Rather, argues Plaintiff, the claimed "virtual client entity" provides a "specific mechanism for" retro-compatibility. (*Id.*). Plaintiff argues that the "virtual client entity" is "specifically adapted to communicate with each mobile [telephone] device based on its technical capabilities," eliminating the "need for the telephone device to be configured in any way to communicate with the virtual client entity." (*Id.* at 4 (citing '434 patent, 5:39-49)). Plaintiff points to three claimed "particular characteristics" of the "virtual client entity," which Plaintiff says provide a "degree of technical detail" that renders the claims non-abstract. (D.I. 28 at 8, 11; D.I. 34 at 2). First, Plaintiff notes that the "virtual client entity" is "specific to" both a mobile telephone device and an Internet-based application residing at a remote server. (D.I. 28 at 8, 11). Second, Plaintiff notes that the virtual client entity is "created specifically to allow

6

communication" between the telephone device and the Internet-based application residing at a remote server. (*Id.*). Finally, Plaintiff notes that the virtual client entity is "maintained only for the duration" of the communications being translated. (*Id.*).

Defendants, on the other hand, argue that the "virtual client entity" is "nothing more than a 'black box,'" because it "provides no details about *how* the claimed invention is achieved." (D.I. 30 at 7). Defendants further argue that each of the claimed "particular characteristics" identified by Plaintiff is "inherent to the concept of translation." (*Id.*). First, "[a] structure that translates data between two incompatible pieces of hardware"—the telephone device and the Internet-based application residing at a remote server, in this case—"must be specific to those two pieces of hardware." (*Id.* at 3). Second, "a translator is necessarily 'created to allow communication' between" the pieces of hardware. (*Id.*). Finally, a translation inherently "lasts only as long as the communications being translated."[1] (*Id.*).

I agree with Defendants. The claims are directed to the idea of facilitating communication between a telephone device and a remote server via an intermediary server in order to overcome hardware limitations.[2] ('434 patent, claim 1). They are not directed to an invention that improves the functionality of this translation process. *Enfish*, 822 F.3d at 1336 (finding that the claims at issue were not directed to an abstract idea because "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity").

---

[1] Plaintiff argues that Defendants made these inherency arguments for the first time in their reply brief. (D.I. 36-2 at 1-2). I disagree. In their opening brief, Defendants argued, "the claims do not recite any specific, non-conventional steps that go beyond the abstract idea of transforming data from one form to another," and that the asserted claims are not "significantly more than a patent upon the abstract concept itself." (D.I. 26 at 11-12). Defendants merely tailored this argument in their reply brief to more specifically respond to arguments made by Plaintiff in its answering brief.

[2] I would more simply characterize the abstract idea as transforming data from one form to another.

7

Rather, each claimed "particular characteristic" identified by Plaintiff is inherent to the concept of translation. For example, a human serving as a language translator would necessarily embody each "particular characteristic." First, Plaintiff notes that the "virtual client entity" is "specific to" both a telephone device and an Internet-based application residing at a remote server. (D.I. 28 at 8, 11). Plaintiff notes that an advantage of this specificity is that the virtual client entity is "adapted to communicate with each" telephone device, and as a result, "there is no need for the telephone device to be configured." (*Id.* at 4). However, a human translator would necessarily have skills "specific to" the languages spoken by the parties requiring interpretation. If the parties could change, or configure, their language skills to accommodate the translator, then there would be no need for translation. Second, Plaintiff notes that the virtual client entity is "created specifically to allow communication" between the telephone device and the Internet-based application residing at a remote server. (*Id.* at 8, 11). Likewise, a human interpreter is summoned "specifically to allow communication" between parties. Finally, Plaintiff notes that the virtual client entity is maintained "only for the duration" of the communications being translated. (*Id.* at 8, 11). A human interpreter is similarly needed "only for the duration" of the parties' communication. Thus, the claimed virtual client entity is a "black box."

Translating a communication from one language into another and delivering the message has previously been found to be abstract by this Court. *See Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, 2015 WL 5156526, at *3 (D. Del. Sept. 2, 2015) ("In *Messaging Gateway*, the claimed method was for 'a computer system [that] receives an SMS text message, converts it into an Internet Protocol message, and delivers the converted message.' . . . Here, the claim invention performs the same 'translation' function. Thus, I find the claims of the '034 patent are directed to the abstract idea of 'translation.'"), *aff'd*, 669 F. App'x 555 (Fed. Cir. 2016);

8

*Messaging Gateway Sols., LLC v. Amdocs, Inc.*, 2015 WL 1744343, at *4 (D. Del. Apr. 15, 2015); *see also Yodlee, Inc. v. Plaid Techs. Inc.*, 2016 WL 2982503, at *22 (D. Del. May 23, 2016) (finding claims directed to an abstract idea because they are "focused on the idea of translating data into a new form, but they say almost nothing about how that translation must occur"). The cases cited by Plaintiff are inapposite because the patents discussed therein provided specific technical solutions to technical problems. *See, e.g., McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314-15 (Fed. Cir. 2016) (finding that a claims was not directed to an abstract idea because the claims were "focused on a specific asserted improvement in computer animation" whereby "[t]he claimed process uses a combined order of specific rules that renders information into a specific format"); *DDR Holdings, LLC v. Hotels com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("But these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.").

Thus, the '434 and '134 patents are directed to an abstract idea.

That the claims are directed to a particular technological environment—communications between a telephone device and an Internet-based application—is irrelevant. (D.I. 28 at 11; *Alice*, 134 S. Ct. at 2358 ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment")).

## 2. Inventive Concept

The determination that a patent is directed to an abstract idea "does not render the subject matter ineligible." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Having decided that the patent's claims are directed to an abstract idea, the Court must next "determine whether the claims do significantly more than simply describe the abstract method." *Ultramercial*, 772 F.3d at 715. Since "a known idea, or one that is routine and conventional, is not inventive in patent terms," this analysis "favors inquiries analogous to those undertaken for determination of patentable invention." *Internet Patents*, 790 F.3d at 1346. Indeed, the Federal Circuit has noted that the two stages of the *Alice* two-step inquiry "are plainly related" and "involve overlapping scrutiny of the content of the claims . . . ." *Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Furthermore, neither "[a] simple instruction to apply an abstract idea on a computer," nor "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an "inventive concept." *Intellectual Ventures I, LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

Claims directed to an abstract idea are patent-eligible only if they explain how the result of the patent is accomplished. *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) ("Nowhere do the claims recite elements or components that describe *how* the invention overcomes these compatibility issues."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) ("Inquiry therefore must turn to any requirements for *how* the desired result is achieved.") (internal citation omitted). This inquiry is distinct from whether the patent specification "teaches an ordinarily skilled

10

artisan how to implement the claimed invention," which is appropriate for consideration under § 112, not § 101. *Visual Memory LLC v. Nvidia Corp.*, 867 F.3d 1253, 1261 (Fed. Cir. 2017).

On their face, these claims do not disclose how the virtual client entity performs translation. More specifically, none of the three claimed "particular characteristics" of the virtual client entity identified by Plaintiff pinpoints how the virtual client entity performs translation.[3] (D.I. 28 at 10-11; D.I. 30 at 3). Rather, as stated above, each "particular characteristic" of the virtual client entity is inherent to the concept of translation.

Plaintiff argues that whether the claimed "characteristics" are "inherent to the concept of translation . . . involves a dispute of fact, and cannot be answered based on the intrinsic record." (D.I. 42 at 1; D.I. 36-2). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which underlies this second step of the *Mayo/Alice* inquiry, "is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). However, there is no dispute of fact as to "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan." Plaintiff makes no "concrete allegations" to support its allegation that the "particular characteristics" are not "well-understood, routine, or conventional," or inherent to translation. *Aatrix Software, Inc. v. Green Shades Software, Inc.*,

---

[3] For ease of reference, Plaintiff identifies three claimed "particular characteristics." Defendants respond that each is inherent to translation. First, Plaintiff notes that the "virtual client entity" is "specific to" both a telephone device and an Internet-based application residing at a remote server. Defendants respond that "a structure that translates data between two incompatible pieces of hardware must be specific to those two pieces of hardware." Second, Plaintiff notes that the virtual client entity is "created specifically to allow communication" between the telephone device and the Internet-based application residing at a remote server. Defendants respond that "a translator is necessarily 'created to allow communication' between" the pieces of hardware. Finally, Plaintiff notes that the virtual client entity is maintained "only for the duration" of the communications being translated. (D.I. 28 at 8, 11). Defendants respond that a translation inherently "lasts only as long as the communications being translated." (D.I. 30 at 3).

11

882 F.3d 1121, 1128 (Fed. Cir. 2018). Rather, Plaintiff argues in conclusory fashion that there is a "sharply disputed factual question." (D.I. 36-2 at 2). As discussed above, the claimed "particular characteristics" of the virtual client entity are not only routine and conventional, but facially inherent to the concept of translation. Plaintiff seeks to invent a factual dispute where none exists.

However, even if there was a dispute of fact as to whether any one "particular characteristic" of the virtual client entity is inherent to the concept of translation, that dispute would not lead me to conclude, without any claim construction, that the claims embody an inventive concept. Defendants need not prove that each "particular characteristic" is inherent to translation. Rather, Defendants need only demonstrate that none of the "particular characteristics" disclose how the virtual client entity functions. Defendants have done so. On their face, these claims are written at such a high level of generality that they do not disclose how the virtual client entity performs translation. The patentee did not include claim language detailing virtual client entity architecture.

Plaintiff also argues that Defendants' inherency argument "rests on a disputed claim construction." (D.I. 36-2 at 3). As a result, Plaintiff argues that I must deny Defendants' motion to dismiss. (*Id.*). Plaintiff argues, for example, that Defendants improperly construe the "created specifically to allow communication between said telephone device and said Internet-based application residing at said second server . . ." limitation. Defendants argue that the limitation is inherent to translation, and therefore does not disclose how the virtual client entity functions, because "a translator is necessarily 'created to allow communication' between the hardware." (D.I. 30 at 3). Plaintiff asserts that Defendants' argument rests on a claim construction that ignores the file history. (D.I. 36-2 at 3). In the file history, Plaintiff argued that this limitation

12

has a sequence requirement. (*Id.*). Specifically, Plaintiff argued that the virtual client entity "is created following the receipt of the caller's request to be connected to an Internet-based application." (*Id.*). However, accepting Plaintiff's claim construction would not change the fact that no part of the claims explicitly recites how the virtual client entity functions. A requirement that a translator is requested only after there has been a request for communication provides no insight into how the virtual client entity actually performs translation. As Defendants note, "it is hard to imagine why a translator would be sought before there is a request for communication." (D.I. 37 at 6). Therefore, Plaintiff's "disputed claim construction" argument falls short.

The claims do not on their face disclose how the virtual client entity performs translation. However, the parties agree that the specification "provides guidance on how the translation between the telephone device and the Internet-application server might occur." (D.I. 26 at 11; D.I. 28 at 12). It is entirely appropriate for a court to look to the specification to understand the claim architecture. *SRI Int'l, Inc. v. Cisco Sys.*, 179 F. Supp. 3d 339, 354 (D. Del. 2016) ("The claims as an ordered combination (in light of the specification) sufficiently delineate 'how' the method is performed to 'improve the functioning of the computer itself,' thereby providing an inventive concept."). However, the claims themselves must provide the inventive concept. *See Internet Patents*, 790 F.3d at 1348 (holding that a claim directed to the abstract idea of "retaining information in the navigation of online forms" did not supply an inventive concept because the claim "contain[ed] no restriction on how the result is accomplished[, that is, t]he mechanism for maintaining the state [of data on a web page] is not described, although this is stated to be the essential innovation"); *see also Two-Way Media Ltd.*, 874 F.3d at 1338-39 ("The main problem that [the plaintiff] cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept.").

13

The term "virtual client entity" appears in the claims. It is therefore appropriate for the Court to look to the "virtual client entity" itself for an inventive concept. Even though none of the claimed "particular characteristics" provides a mechanism by which the virtual client entity performs translation, the parties' aforementioned agreement indicates that the specification might provide architecture for the "virtual client entity." Therefore, I must construe "virtual client entity" before I can determine whether the claims do or do not provide an inventive concept.

For the reasons given above, I find that claim 1 of the '434 patent is drawn to an abstract idea. However, I cannot determine whether or not claim 1 of the '434 patent provides an inventive concept until I construe "virtual client entity." The parties agree that claims 1, 9, and 12 of the '134 patent are equivalent to claim 1 of the '434 patent for purposes of this motion. Therefore, the invalidity of each asserted claim under 35 U.S.C. § 101 rises and falls with the invalidity of claim 1 of the '434 patent. I will deny without prejudice Defendants' Motion to Dismiss for Failure to State a Claim and for Improper Venue (D.I. 25) with respect to all asserted claims. Defendants may re-raise the issue at summary judgment.

**B. Venue**

Ordinarily, a party may not bring a venue defense it could have raised in its first responsive pleading. Fed. R. Civ. P. 12(g)(2). However, Rule 12(g) allows a party to bring a venue defense not available at the time of the first responsive pleading. *Id.* Defendant Expedia, Inc. (WA) ("Expedia-WA") argues that its venue defense was not available when it filed its initial Fed. R. Civ. P 12(b) motion to dismiss in November 2016. (D.I. 30 at 9; D.I. 13).

Expedia-WA's "legal basis did not exist at the time of the answer or pre-answer motion" in 2016. *Gilmore v. Palestine Interim Self-Gov't Auth.*, 843 F.3d 958, 964-65 (D.C. Cir. 2016). Expedia-WA had no legal basis for its Rule 12(b)(3) motion until May 22, 2017, when the

14

Supreme Court decided *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017). *In re Micron Tech., Inc.*, 875 F.3d 1091, 1099 (Fed. Cir. 2017). Accordingly, the Court can consider Expedia-WA's venue defense.

The patent venue statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district [1] where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Plaintiff does not allege that venue is proper in its case against Expedia-WA under the first prong of § 1400(b). Rather, Plaintiff argues that venue is proper under the second prong. (D.I. 26 at 13; D.I. 28 at 17-19).

Plaintiff argues that venue is proper because Expedia-WA has a "regular and established place of business" in Delaware. (D.I. 28 at 18). Plaintiff cites *Aileen Mills Co. v. Ojay Mills*, 192 F. Supp. 131, 134-35 (S.D.N.Y. 1960) for the proposition that an agent might have a "regular and established place of business" where its principal has a "regular and established place of business." (D.I. 28 at 18-19). Plaintiff argues that Expedia-WA, as a subsidiary of Expedia, Inc. (DE) ("Expedia-DE"), is an agent of Expedia-DE. (*Id.* at 19). However, Plaintiff does not argue that Expedia-DE has a "regular and established place of business" in Delaware. Rather, Plaintiff notes that Expedia-DE is incorporated in Delaware, and is therefore a resident of Delaware. (D.I. 28 at 18). In doing so, Plaintiff conflates the prongs of 28 U.S.C. § 1400(b). *Ojay Mills* may support the proposition that a principal's "regular and established place of business" can determine an agent's "regular and established place of business," but Plaintiff cites no case indicating that a principal's *residence* can determine an agent's "regular and established place of business."

Accordingly, there is no basis for venue over Expedia-WA.

In their opening brief, Defendants argued that the Court should dismiss the claims against Expedia-WA for improper venue. (D.I. 26 at 12). In its brief, Plaintiff did not respond with any preference for the Court to transfer the case, rather than dismiss the case. (D.I. 28 at 14-20). At oral argument, the Court asked Plaintiff whether it would prefer the Court to transfer the case to the Western District of Washington, or dismiss the case. (Tr. 38:17-21). Plaintiff did not seem receptive to the possibility of a transfer to the Western District of Washington. (Tr. 38:22-40:9).

Thus, I will grant Defendants' Motion to Dismiss for Failure to State a Claim and for Improper Venue (D.I. 25), as to improper venue.[4]

## IV. CONCLUSION

Defendants' Motion to Dismiss for Failure to State a Claim and for Improper Venue (D.I. 25) is denied without prejudice as to failure to state a claim, and is granted as to improper venue. Because this opinion addresses the arguments raised in support of Plaintiff's Motion for Leave to File a Supplemental Brief in Opposition to Defendants' Motion to Dismiss, I will dismiss that motion as moot. (D.I. 36).

A separate order will be entered.

---

[4] Plaintiff argues that it should be permitted to obtain venue-related discovery. (D.I. 28 at 20). The Supreme Court has held that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). Unless a plaintiff's claim is "clearly frivolous," jurisdictional discovery should be allowed. *Toys "R" Us Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

Here, no venue-related discovery would lead me to deny Defendants' Motion to Dismiss for Failure to State a Claim and for Improper Venue (D.I. 25), as to improper venue. Had Plaintiff alleged that Expedia-DE's "regular and established place of business" determined Expedia-WA's "regular and established place of business," then venue-related discovery into Expedia-DE and Expedia-WA's agency relationship might be warranted. However, no information obtained through venue-related discovery would change the fact that Plaintiff cites no case indicating that a principal's *residence* can determine an agent's "regular and established place of business." Venue-related discovery would amount to a fishing expedition. Thus, I will deny Plaintiff's request for venue-related discovery.