IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

T-JAT SYSTEMS 2006 LTD.,

    Plaintiff,

v.

EXPEDIA, INC. (DE) and ORBITZ
WORLDWIDE, INC.,

    Defendants.

No. 16-cv-581-RGA

MEMORANDUM ORDER

Presently before the Court is the issue of claim construction of multiple terms in U.S. Patent Nos. 8,064,434 ("the '434 patent) and 9,210,142 ("the '142 patent") (collectively, "the asserted patents).[1] I have considered the parties' joint claim construction chart and brief. (D.I. 102, 110). I heard oral argument on June 20, 2019. (D.I. 118).

**A.  BACKGROUND**

Plaintiff filed this action on July 7, 2016 against Defendants for infringement of the '434 and '142 patents. (D.I. 1). Plaintiff alleges infringement of claim 1 of the '434 patent and claims 1, 9, and 12 of the '142 patent. Claim 1 of the '434 patent is representative for the purposes of this opinion.

Claim 1 provides:

1. A method for providing a user of a telephone device with a capability to use Internet-based applications, which method comprises the steps of:

---

[1] The asserted patents share a specification. (D.I. 110 at 1 n.1). For the purposes of this opinion, I will cite to the '434 patent specification.

transmitting from said telephone device an indication towards a first server, denoting a request to be connected to an Internet-based application residing at a second server;

providing said user with a menu from which the user selects a requested Internet-based application;

after selecting an application, establishing a communication path that extends between said telephone device and said second server via said first server;

at said first server, creating a virtual client entity specific to said telephone device and said Internet-based application to be used, created specifically to allow communication between said telephone device and said Internet-based application residing at said second server, and maintained only for the duration of a communication session that is about to take place between said user and said Internet-based application, thereby providing the user of said telephone device with the capability to use said Internet-based application; and

exchanging communications between said second server and said telephone device.

'434 patent at 8:11-34.[2]

## B. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification

---

[2] The parties treat claim 1 of the '434 patent and claim 9 of the '142 patent as "synonymous." (D.I. 118 at 11:6-14).

2

is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315.

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [This is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13. "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19. Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude

3

the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation omitted).

## C. CONSTRUCTION OF DISPUTED TERMS

### 1. "telephone device"

    a. *Plaintiff's Proposed Construction*: plain and ordinary meaning, or alternatively, "a telephone (e.g., a mobile phone) with the ability to communicate over the Internet"

    b. *Defendants' Proposed Construction*: "a cellular telephone that cannot communicate directly with Internet-based applications"[3]

    c. *Court's Construction*: plain and ordinary meaning

The parties agree that a "telephone device" is capable of using the Internet generally. (D.I. 118 at 20:20-21:25; *see also id.* at 8:5-25 (Plaintiff's counsel distinguishing between communication over the Internet generally and communication with Internet-based applications as described in the asserted patents)). The issue is whether "telephone device" carries an additional negative limitation such that it "cannot communicate directly with Internet-based applications." Defendants argue that such a limitation is required by the claim language, as well as disclaimer in the specification and prosecution history. (D.I. 110 at 7).

First, Defendants point to the preamble of the asserted claims. Each preamble recites a method for providing "a user of a telephone device with a capability to use Internet-based applications." '434 patent at 8:11-12; '142 patent at 8:18-19, 9:43-44, 10:24-25. Therefore, Defendants argue that the "telephone device" is not capable of using Internet-based applications without the claimed invention. Finding otherwise would render the claimed invention moot. (D.I. 110 at 7-8).

---

[3] Defendants altered their proposed construction between the joint claim construction chart and brief. (D.I. 110 at 7 n.4).

4

Plaintiff argues that the preamble is not limiting, and regardless, that it only requires the claimed methods to provide "*a* capability to use Internet-based applications," not the *exclusive* capability. (*Id.* at 12). I agree. I do not think the preamble requires "telephone device" to be construed more narrowly than its plain and ordinary meaning. Having a "telephone device" that is independently capable of using Internet-based applications does not necessarily moot the claimed invention. The fact that a device can achieve the end result in a different unclaimed way does not preclude it from practicing the claimed invention.

Second, Defendants argue disclaimer based on the specification and prosecution history. Disclaimer occurs when the patentee disavows the full scope of a claim term in the specification or during prosecution. *Poly-America, L.P. v. API Indus. Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016). "In either case, the standard of disavowal is exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature." *Id.* Disavowal can be implicit, however, such as "when the specification distinguishes or disparages prior art based on the absence of [a] feature." *Id.*

The background section of the specification provides:

[T]he current cellular telephones . . . have not been adapted to support [some] services, and although quite a few of their users may be interested in receiving services such as ICQ, MSN and other real time applications, still, the users of the currently available cellular devices cannot use these applications. The major reason is that the provider's server(s) that support such an application is adapted to communicate with a computer terminal by exchanging messages therewith. For a number of reasons, for example, as the cellular telephone keyboard has a limited number of keys its user has fewer capabilities to easily engage in real time communications with the application's server(s), this cannot be achieved through the use of cellular devices. One solution to overcome this problem is of course by introducing a full range of new cellular telephone devices. However, in view of the already existing number of devices [that] are being used and the extra size/weight that might be associated with the insertion of functionalities of a PC/laptop to a cellular telephone, another solution is required.

5

'434 patent at 2:5-24. Defendants argue that the specification thus disparages a "telephone device" with PC/laptop functionalities capable of communicating with Internet-based applications such as ICQ and MSN. (D.I. 110 at 8-9).

Defendants also rely on the prosecution history. During prosecution, the patentees stated that the claimed invention "provid[ed] the telephone with capabilities it did not previously, and would not possess, absent [the] invention." (D.I. 111 at JA145). Other portions of the prosecution history reiterate that the invention "seeks to provide the user of a telephone device with a capability to use an Internet-based application." (*Id.* at JA108-11).

The specification does not so much disparage a "telephone device" with PC/laptop functionalities as note that it does not exist, possibly due to barriers such as increased size/weight. The cases Defendants cite are distinguishable. *See EMC Corp. v. Pure Storage, Inc.*, 77 F. Supp. 3d 402, 411-12 (D. Del. 2015) (finding disclaimer of multiple-block error-detecting code where the patent highlighted the benefits of using error detecting code for individual blocks of data while disparaging the limitations of that for multiple blocks of data); *Openwave Sys., Inc. v. Apple Inc.*, 2014 WL 651911, at *3 (D. Del. Feb. 19, 2014), *aff'd*, 808 F.3d 509 (Fed. Cir. 2015) (finding disclaimer of mobile devices containing computer modules where the specification expressly stated that the mobile device did not require a separate computer module and repeatedly disparaged such combinations); *see also Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318-19 (Fed. Cir. 2006) (finding "fuel injection system component" limited to "fuel filter" because the specification described the invention as a fuel filter and did not provide any broader disclosure).

I do not think the specification or prosecution history shows clear disavowal. The claimed invention is described as one solution for telephone devices to communicate with

Internet-based applications. The prosecution history is consistent with that view, describing the claimed invention as providing "*a* capability." (D.I. 111 at JA108-11). The specification merely identifies telephone devices with PC/laptop functionalities as another possible solution, albeit one with its own difficulties. The fact that such devices now exist (*i.e.*, smartphones) does not mean that the claimed invention is no longer effective. Again, I see no reason why a "telephone device" could not be capable of both methods of using Internet-based applications. Defendants have not cited any authority that requires claims to be construed more narrowly where the claimed invention is one of two methods of accomplishing the same goal. Therefore, I construe "telephone device" to have its plain and ordinary meaning, which does not exclude devices capable of communicating directly with Internet-based applications.

## 2. "virtual client entity"

   a. *Plaintiff's Proposed Construction*: "an instance of executable software that emulates connectivity and/or resources of a computing device or software adapted to connect and request information from a server"[4]

   b. *Defendants' Proposed Construction*: Governed by 35 U.S.C. § 112, ¶ 6. Functions are (1) being "specific to said telephone device and said Internet-based application to be used," (2) "allow[ing] communication between said telephone device and said Internet-based application," and (3) being "maintained only for the duration of a communication session." There is no corresponding structure and thus the term is indefinite.

   c. *Court's Construction*: Indefinite under 35 U.S.C. § 112, ¶ 6.

Means-plus-function claiming allows a patentee to express a claim limitation by reciting a function to be performed rather than a structure for performing that function. Such claims are governed by 35 U.S.C. § 112, ¶ 6, which states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in

---

[4] Plaintiff proposed a new construction at the Markman hearing. (D.I. 118 at 52:16-53:2).

7

support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Where, as in this case, the claim term does not use the word "means," there is a rebuttable presumption that § 112, ¶ 6 does not apply. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348-49 (Fed. Cir. 2015). The essential inquiry, however, is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* at 1348. Section 112, ¶ 6 will apply despite the absence of the word "means" if "the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* at 1349 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).

Defendants assert that "virtual client entity" recites the functions of (1) being specific to the telephone device and the Internet-based application to be used, (2) allowing communication between the telephone device and the Internet-based application, and (3) being maintained only for the duration of a communication session. (D.I. 110 at 29-30). Defendants further argue that "virtual client entity" is itself a "black box" that connotes no structure. Therefore, nothing in the claims provides the requisite structure to perform the recited functions and § 112, ¶ 6 applies. (*Id.* at 32).

Plaintiff argues that, as a matter of statutory interpretation, § 112, ¶ 6 only applies to "a claim for a combination" and thus does not apply to the asserted method claims. (D.I. 110 at 41). Plaintiff cites no authority. Alternatively, Plaintiff argues that, for method claims, courts generally find the absence of the word "means" to be a "complete bar" on applying § 112, ¶ 6. (*Id.* at 41-42). I do not find either argument persuasive. The Federal Circuit has made clear that the presence or absence of the word "means" is not dispositive. *Williamson*, 792 F.3d at 1349. I see no reason to make an exception for method claims. *See Media Rights Techs., Inc. v. Capital*

8

*One Fin. Corp.*, 800 F.3d 1366, 1368, 1373-74 (Fed. Cir. 2015) (finding "compliance mechanism" to be a means-plus-function limitation wherein the claim was a method claim and did not use the word "means").

It is undisputed that the claims recite, at minimum, the function of allowing communication between the telephone device and Internet-based application. (D.I. 110 at 20, 30). The key question is whether the term "virtual client entity" provides sufficient structure to perform that function. The parties agree that "virtual client entity" is a coined term. (D.I. 110 at 30; D.I. 118 at 50:23-51:6).

Plaintiff argues that the individual terms "virtual" and "client" had known meanings in the art at the time of the invention. Therefore, a person of ordinary skill in the art would have known the meaning, and associated structure, of the combined term "virtual client entity." (D.I. 110 at 42). Specifically, Plaintiff argues that "virtual" means "an environment, usually a program or operating system" (*id.* at 43), "client" means "a (device or) program that requests a service provided by another (device or) program" (*id.* at 44), and "entity" means "an instance of certain executable code" (*id.*). Thus, together, "virtual client entity" would have been understood to mean "a program that when executed is perceived by a server to be a client (e.g., it performs the steps necessary to connect to, request and receive a service, and maintain connectivity with the server), although it is not in actuality the client software expected by the server." (*Id.* at 46).

It is a disputed question of fact how a person of ordinary skill in the art would have understood the term "virtual client entity" at the time of the invention. Regardless, even accepting Plaintiff's definition as true, I find "virtual client entity" fails to provide sufficient structure to avoid § 112, ¶ 6. The only structural element of Plaintiff's definition is "a program."

9

The program is defined purely by its functions of "perform[ing] the steps necessary to connect to, request and receive a service, and maintain connectivity with the server." Plaintiff dismisses the structural elements of the program as "mere implementation detail," which would be known to one of skill in the art. (*Id.* at 46-47). It is well established, however, that "the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none is otherwise disclosed." *Williamson*, 792 F.3d at 1351. Therefore, I find a person of ordinary skill in the art would not have understood "virtual client entity" to recite sufficient structure capable of allowing communication between the telephone device and Internet-based application. As such, "virtual client entity" is a means-plus-function limitation subject to the requirements of § 112, ¶ 6.

As a means-plus-function limitation, "virtual client entity" is indefinite "if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." *Williamson*, 792 F.3d at 1352. For computer programs, the specification must disclose an algorithm for performing the claimed function. "The algorithm may be expressed as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Id.* Indefiniteness must be proven by clear and convincing evidence. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

Plaintiff has failed to identify any algorithm disclosed in the specification. The only evidence Plaintiff points to is a flow chart in Figure 4. The chart depicts step 150 as "creating a virtual client at the TJat server," followed by step 160 "establishing a session between the user and the requested application's server via TJat server," step 170 "application authenticates the user," and step 180 "user receives all files requested as emulation on his/her mobile telephone

10

device." '434 patent, fig. 4. Figure 4 does nothing to explain how the virtual client is created—it is a single box in the flow chart.

I already addressed "virtual client entity" at the motion to dismiss stage. In assessing patentability under 35 U.S.C. § 101, I found "virtual client entity" to be a "black box." (D.I. 45 at 8). I left the exact nature of the term open, however, because Plaintiff indicated that the specification "might provide architecture." (*Id.* at 14). Now, having heard Plaintiff's arguments based on the specification, it is clear that the specification provides no structure corresponding to "virtual client entity." There is nothing in the patent that even remotely resembles an algorithm sufficient to perform the function of allowing communication between the telephone device and Internet-based application. What's more, the "virtual client entity" and its ability to perform that function appears to be the point of novelty of the asserted patents. (D.I. 110 at 32-33; D.I. 118 at 50:17-20 (Plaintiff's counsel agreeing that the use of the "virtual client entity" is the point of novelty)). It is a well-known danger of functional claiming that the patentee "uses conveniently functional language at the exact point of novelty." *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 371 (1938).

Therefore, I find Defendants have shown that the term "virtual client entity" is indefinite by clear and convincing evidence.

3. **"specific to said telephone device and said Internet-based application to be used"**

   a. *Plaintiff's Proposed Construction*: plain and ordinary meaning, or alternatively, "reflecting resources available to a particular telephone device, and satisfying the requirements set for communication with the application server"

   b. *Defendants' Proposed Construction*: "reflecting a particular telephone device's configuration and resource constraints and the application server's communication requirements"

   c. *Court's Construction*: "reflecting resources available to a particular telephone device, and satisfying the requirements set for communicating with the application server"

11

The asserted claims require "creating a virtual client entity *specific to said telephone device and said Internet-based application to be used*." *E.g.*, '434 patent at 8:23-25 (emphasis added). The only issue for claim construction is whether the virtual client entity must reflect the telephone device configuration. (D.I. 110 at 59).

The specification states:

> [O]ne of the advantages of the solution provided by the present invention is[] that there is no need for the telephone device to be configured in any way to communicate with the virtual client entity, because the provider's server which receives the request is able to recognize the resources available for the telephone device making the request on the one hand, and the requirements set for communicating with the requested application's server, so that the virtual client which is constructed by the provider's server is constructed in a way that takes into account these various constraints.

'434 patent at 5:39-43. The specification explains that the telephone device need not be configured in any way because the relevant server will account for the "resources available" to that device. Both parties propose constructions incorporating the "resources available" limitation.

Defendants' proposed construction includes an additional limitation specific to the telephone device's configuration. (D.I. 110 at 59-60). Defendants rely on the prosecution history, which states that the claimed invention allows the virtual client entity to be "constructed to match . . . at least one protocol by which the telephone device is adapted to communicate." (D.I. 111 at JA439). Defendants argue that a person of ordinary skill in the art would have understood that to mean the virtual client entity "reflects the protocols that are part of a particular telephone device's configuration." (D.I. 110 at 60 (citing D.I. 111 at JA607-08)).

Defendants' proposed construction is contrary to the specification's express statement that "there is no need for the telephone device to be configured in any way to communicate with the virtual client entity." I do not think the prosecution history is strong enough to overcome that

statement. *See Phillips*, 415 F.3d at 1315 (The specification "is the single best guide to the meaning of a disputed term."). On the other hand, the plain and ordinary meaning of "specific to said telephone device and said Internet-based application to be used" fails to resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."). Therefore, I adopt Plaintiff's proposed alternative construction of "reflecting resources available to a particular telephone device, and satisfying the requirements set for communication with the application server," which I believe reflects the plain and ordinary meaning of the term. I reject Defendants' unsupported limitation.

4. **"first server" / "second server"**

   a. *Plaintiff's Proposed Construction*: plain and ordinary meaning

   b. *Defendants' Proposed Construction*: "a server separate from the telephone device and second server" / "a server separate from the telephone device and first server"

   c. *Court's Construction*: plain and ordinary meaning

The parties dispute how to distinguish the "first server," "second server," and "telephone device." (D.I. 110 at 63-69). Defendants argue that each is a separate component. (*Id.* at 65). Plaintiff concedes that the "first server" and the "second server" "are not the same thing," but do not otherwise comment on the relationship between each server and the "telephone device." (*Id.* at 68).

It is not clear what Defendants mean by "separate." Based on counsel's representations at the Markman hearing, it seems that they mean having physically separate locations. (*See* D.I. 118 at 77:21-78:11). Although the claims do refer to each component separately, nothing in the claims indicates physical separation. Likewise, Figures 2 and 3 in the specification merely depict block diagrams wherein each component is a separate block. '434 patent, figs. 2, 3.

13

Defendants fail to explain why those diagrams require physical separation, as opposed to just conceptual separation. (*See* D.I. 110 at 65-66; D.I. 118 at 81:1-12). Regardless, specific embodiments are not generally limiting. *Phillips*, 415 F.3d at 1323; *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019).

Defendants' proposed construction does nothing to clarify the claim terms and is not supported by the record. If "separate" includes any type of separation, physical or conceptual, Defendants' proposed construction adds nothing to the plain and ordinary meaning of the terms. The fact that the components have distinct names sufficiently communicates some level of separation. If "separate" is limited to physical separation, Defendants' proposed construction is improper absent clear disavowal of claim scope. As discussed, Defendants have failed to provide any evidence in support of physical separation. Therefore, I adopt Plaintiff's proposed construction of the plain and ordinary meaning.

IT IS SO ORDERED this 21 day of August 2019.

*Richard G. Andrews*
United States District Judge